UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KEITH E. HOGARTH,

                    Petitioner,

vs.                                    Case No. 3:09-cv-496-J-34JBT

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

        Petitioner Keith E. Hogarth initiated this action by filing a
pro se Petition for Writ of Habeas Corpus (Petition) (Doc. #1)
under 28 U.S.C. § 2254 with exhibits (Pet. Ex.) on May 29, 2009,
pursuant to the mailbox rule.  Hogarth challenges a 2006 state
court (Duval County, Florida) judgment of conviction for robbery on
three grounds.  Respondents have submitted a memorandum in
opposition to the Petition.  See Respondents' Response to Petition
for Writ of Habeas Corpus (Response) (Doc. #8); Exhibits (Resp.
Ex.) (Doc. #9).  On July 2, 2009, the Court entered an Order to
Show Cause and Notice to Petitioner (Doc. #7), admonishing
Petitioner regarding his obligations and giving Petitioner a time
frame in which to submit a reply.  Petitioner submitted a brief in
reply on January 22, 2010.  See Petitioner's Reply to State's
Answer (Reply) (Doc. #18).  This case is ripe for review.

## II. Procedural History

On June 6, 2006, the State of Florida charged Hogarth with four counts of armed robbery. Resp. Ex. A-1 at 9-10, Information. On July 25, 2006, Hogarth entered a plea of guilty to four counts of unarmed robbery in exchange for the State's agreement to a sentence within a range of fifteen to thirty years of imprisonment on each count, to run concurrently with the other counts and a pending parole violation. Id. at 20-21, Plea of Guilty and Negotiated Sentence; 105-24, Transcript of the Plea Proceeding (Plea Tr.). On August 28, 2006, the trial court adjudicated Hogarth guilty of four counts of unarmed robbery and sentenced him, as a habitual felony offender and prison releasee re-offender, to twenty years of imprisonment on each robbery count, to run concurrently with the other counts and the pending parole violation. Id. at 57-65, Judgment; 125-46, Transcript of the Sentencing Proceeding (Sentencing Tr.).

On appeal (Case No. 1D06-4622), Petitioner, through counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Resp. Ex. A-2, Initial Brief of Appellant. Hogarth filed a pro se brief, arguing that the trial court did not have subject matter jurisdiction to accept the guilty plea due to the legally insufficient charging Information. Resp. Ex. A-5. The State did

not file an Answer Brief.[1]  On December 5, 2007, the appellate court affirmed Hogarth's conviction and sentence per curiam. Hogarth v. State, 969 So.2d 1020 (Fla. 1st DCA 2007); Resp. Ex. A-7. The mandate issued on January 2, 2008. Resp. Ex. A-7. Hogarth did not seek review in the United States Supreme Court.

During the pendency of the direct appeal, Hogarth submitted a letter to the Florida Supreme Court.  Resp. Ex. C-1 at 1-2. Construing Hogarth's letter as a petition for writ of habeas corpus, the Florida Supreme Court transferred the action to the circuit court on September 26, 2006.  Resp. Ex. B.  On October 17, 2006, the circuit court denied the petition.  Resp. Ex. C-1 at 13-14.  Hogarth filed a motion for rehearing, see id. at 27-29, which the court denied, see id. at 30-31.  On appeal (Case No. 1D06-6427), the parties filed briefs.  Resp. Exs. C-2; C-3.  On December 17, 2007, the appellate court reversed the circuit court's order and remanded the case to the circuit court with instructions to dismiss the motion for lack of jurisdiction since the circuit court erred in ruling on the motion while Hogarth's direct appeal was pending.  Hogarth v. State, 970 So.2d 880 (Fla. 1st DCA 2007); Resp. Ex. C-4.[2]  The mandate issued on January 14, 2008.  Resp. Ex.

---

[1] Online docket, Keith Hogarth v. State of Florida, Case No. 1D06-4622, website for the First District Court of Appeal (http://www.1dca.org).

[2] Keith Errol Hogarth v. State of Florida, Case No. 1D06-6427, http://www.1dca.org).

C-5.  In accordance with the mandate, the circuit court entered an order dismissing the petition for lack of jurisdiction without prejudice to Hogarth's refiling it upon issuance of a mandate relating to his direct appeal.  Resp. Ex. C-6.

On January 25, 2008, Hogarth filed a pro se motion for reduction or modification of sentence pursuant to Florida Rule of Criminal Procedure 3.800(c).  Resp. Ex. D-1.  The circuit court denied the motion.  Resp. Ex. D-2.  On April 25, 2008, Hogarth, through counsel, filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). Resp. Ex. E-1 at 1-105.  In his request for post conviction relief, Hogarth asserted that his conviction was illegal because the Assistant State Attorney, who filed the Information, falsely swore that she had received testimony under oath from a material witness to support the Information (ground one).  Additionally, Hogarth claimed that his counsel (Dale C. Carson and Shannon H. Padgett) were ineffective because they failed to: pursue the alleged defect in the Information prior to the trial (ground two), and investigate the reliability and initial source of the BOLO (ground four). Hogarth also asserted that counsel failed to file motions to suppress relating to: items found in Hogarth's vehicle during the alleged illegal stop (ground three); evidence obtained following the alleged illegal arrest (ground five); the unduly suggestive show-ups (ground six); and the illegally obtained confession and

incriminating statements (ground seven).  The court denied the Rule 3.850 motion on May 13, 2008.  <u>Id</u>. at 106-09.  On appeal (Case No. 1D08-4819), Hogarth filed a <u>pro se</u> brief, <u>see</u> Resp. Ex. E-2; however, the State filed a notice that it would not file an answer brief, <u>see</u> Resp. Ex. E-3.  The appellate court affirmed the denial per curiam on March 3, 2009, <u>see</u> <u>Hogarth v. State</u>, 4 So.3d 1225 (Fla. 1st DCA 2009); Resp. Ex. E-4, and the mandate issued on March 31, 2009, <u>see</u> Resp. Ex. E-5.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>.

<u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed <u>de novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

6

> Jennings v. McDonough, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted).  In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable."  Williams, 529
> U.S. at 409, 120 S.Ct. at 1521.  Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[3]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir.), cert. denied, 131

S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling.  Harrington v. Richter, 131 S.Ct. 770,

785 (2011) (holding that § 2254(d) does not require a state court

to give reasons before its decision can be deemed to have been

adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr.,

278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906

(2003).  Thus, to the extent that Petitioner's claims were

---

[3] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[4] A reasonable probability is a

---

[4] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

> probability sufficient to undermine confidence
> in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id</u>., at 687, 104
> S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[5], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

---

[5] <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009).

The question "is not whether a federal
court believes the state court's
determination" under the <u>Strickland</u> standard
"was incorrect but whether that determination
was unreasonable - a substantially higher
threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
1933. And, because the <u>Strickland</u> standard is
a general standard, a state court has even
more latitude to reasonably determine that a
defendant has not satisfied that standard.
<u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664,
124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
("[E]valuating whether a rule application was
unreasonable requires considering the rule's
specificity. The more general the rule, the
more leeway courts have in reaching outcomes
in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see</u> <u>also</u>

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In

addition to the deference to counsel's performance mandated by

<u>Strickland</u>, the AEDPA adds another layer of deference--this one to

a state court's decision--when we are considering whether to grant

federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Hogarth claims that, since the State Attorney's

Office was unable to produce sworn statements from material

witnesses to substantiate the charging Information, the trial court

did not have subject matter jurisdiction to accept the guilty plea.

<u>See</u> Petition at 4-5. Hogarth raised this issue in his <u>pro</u> <u>se</u> brief

on direct appeal, <u>see</u> Resp. Ex. A-5; however, the State did not

file an Answer Brief.[6]   The appellate court affirmed Hogarth's conviction and sentence per curiam.  Hogarth, 969 So.2d 1020; Resp. Ex. A-7.

To the extent that Hogarth raised this trial court error claim on direct appeal as a federal constitutional claim, the appellate court may have affirmed Petitioner's conviction on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[7]   After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim

_____

[6] Keith Hogarth v. State of Florida, Case No. 1D06-4622, http://www.1dca.org.

[7] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  See Harrington, 131 S.Ct. at 785.

11

is, nevertheless, without merit. Florida Rule of Criminal Procedure 3.140(g) states, in pertinent part:

> An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense. . . .

The Information, filed in this case, tracks the language of Rule 3.140(g).

> Personally appeared before me, Dawn Hudson Bar #184616, Assistant State Attorney, for the Fourth Judicial Circuit of the State of Florida, in and for Duval County, who is personally known to me, and who being first duly sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged, and that **this prosecution is instituted in good faith, and hereby certifies that testimony under oath has been received from the material witness(es) for the offense.**

See Resp. Ex. A-1 at 10 (emphasis added).

Hogarth argues that, in response to his public records request, he received a copy of a July 20, 2007 letter from a paralegal in the State Attorney's Office, which stated: "There were no sworn statements or depositions contained within this State Attorney file."[8] The post conviction court stated: "From this one

---

[8] Pet. Ex. A., Letter to Hogarth from Tracee S. Perry, Paralegal Administrator, State Attorney's Offie, dated July 20, 2007; Resp. Ex. E-1 at 55.

sentence[,] Defendant concludes that the Assistant State Attorney never took any sworn statement to support the Information. But[,] of course, there is no requirement under Fla. R. Crim. P. 3.140(g) that such a statement be written. C.f., State v. Hartung, 543 So.2d 236 (Fla. 5th DCA 1989)."[9] Resp. Ex. E-1 at 107. Indeed, Rule 3.140(g) does not mandate that the charging Information be supported by written sworn statements of the material witnesses.

Based on the facts relating to the robberies for which Hogarth was charged and the witnesses listed in the arrest report (see Resp. Ex. A-1 at 1-4), the prosecutor's certification in the Information in conformity with Rule 3.140(g), the sufficiency of the Information in setting forth the elements of the offenses, and the sufficiency of the factual basis for the guilty plea (see Plea Tr. at 117-19), the trial court had subject matter jurisdiction to accept Hogarth's guilty plea. In accepting the guilty plea, the trial court neither erred nor violated Hogarth's due process rights. Therefore, ground one is without merit.

---

[9] See State v. Hartung, 543 So.2d 236 (Fla. 5th DCA 1989) (holding that the state attorney who signs the Information charging a felony offense need not personally administer the oath and hear testimony of material witnesses on which the charges are based, but the testimony may be sworn to before anyone authorized to administer oaths and may be given out of the presence of the state attorney; the attorney who signs the Information may properly certify that he has "received testimony under oath" from material witnesses when he has received and considered testimony taken before others), rev. denied, 551 So.2d 461 (Fla. 1989).

## B. Ground Two

As ground two, Hogarth claims that his conviction is illegal because his counsel was ineffective in failing to assert that the prosecutor falsely swore in the Information that she had received testimony under oath from a material witness to the charges. Assuming that pro se Petitioner intends to raise the same claim here that he raised in his Rule 3.850 motion in state court, his claim is sufficiently exhausted. Ultimately, the trial court denied the Rule 3.850 motion relating to this issue, stating:

> Defendant first asserts that his conviction was illegal because the Assistant State Attorney who filed the Information against him falsely swore therein that she had received testimony under oath from a material witness to the charges to support the Information. This claim must fall for several reasons. First, it is predicated solely upon "newly discovered evidence" in the form of correspondence mailed to Defendant on July 20, 2007, by the Office of the State Attorney which prosecuted this action. The letter was written in response to a public records request made by the Defendant and states, insofar as it might be relevant here, "There were no sworn statements or depositions contained within this State Attorney file." (Copy of correspondence attached to Defendant's Motion as Exhibit J). From this one sentence[,] Defendant concludes that the Assistant State Attorney never took any sworn statement to support the Information. But[,] of course, there is no requirement under Fla. R. Crim. P. 3.140(g) that such a statement be written. C.f., State v. Hartung, 543 So.2d 236 (Fla. 5th DCA 1989).
>
> . . . .

14

> Finally, [with respect to the ineffectiveness
> of counsel,] the Defendant fails to
> demonstrate any prejudice to him by virtue of
> any possible defect in the Information . . . .
> Quite simply, as Defendant's own motion
> reflects, had the Information been dismissed,
> the state would have simply filed a new one
> against him.

Resp. Ex E-1 at 106-07. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim. Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. See Section VII. A., Ground One.

### C. Ground Three

As ground three, Hogarth claims that his attorneys were ineffective because they (Dale C. Carson and Shannon Padgett)

15

failed to file pretrial motions to suppress evidence (relating to evidence obtained during an alleged illegal stop, arrest, show-ups, and interrogation), thus resulting in Hogarth's involuntarily and unknowingly entering a guilty plea. Assuming that <u>pro</u> <u>se</u> Petitioner intends to raise the same ineffectiveness of trial counsel claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted. Ultimately, the trial court denied the Rule 3.850 motion. Resp. Ex. E-1 at 107-08. Upon Hogarth's appeal, the appellate court affirmed the trial court's denial per curiam.

Hogarth's ineffectiveness claim is without merit. As previously explained, Hogarth entered a plea of guilty to four counts of unarmed robbery. At the plea hearing, defense counsel (Shannon Padgett) announced that: she had discussed the case with Hogarth; Hogarth had authorized her to enter a plea of guilty to the charges of four counts of robbery; the prosecutor had agreed to a range of fifteen to thirty years of incarceration and concurrent sentences for all four counts; and she had reviewed the Plea of Guilty form with Hogarth, who understood and signed the form. Plea Tr. at 108, 110. Hogarth affirmed that he was not under the influence of any kind of medicines or drugs and understood that he was pleading guilty to four separate counts of unarmed robbery. <u>Id</u>. at 112.

When the trial judge advised Hogarth that the maximum sentence he could receive would be thirty years of imprisonment and the minimum sentence he could receive would be fifteen years of imprisonment, Hogarth affirmed that he understood. _Id_. at 112, 114. When the trial judge inquired as to whether anyone had promised him anything other than the agreed-upon sentencing range, Hogarth referred to the fact that each robbery charge carried a maximum penalty of thirty years, totaling one hundred and twenty years of imprisonment he would face if he proceeded to trial. _Id_. at 114.

In his exchange with the state court judge, Hogarth affirmed that he had sufficient time to review the plea form with counsel and that he understood the plea. _Id_. at 115. Hogarth also acknowledged that he was satisfied with his attorneys and that there was not anything that they did not do that he wanted them to do. _Id_. Hogarth stated: "They've done a good job." _Id_. When the trial judge asked if there was anything counsel did do that he did not want them to do, Hogarth replied, "No, sir." _Id_. at 116. The trial judge then proceeded to advise Hogarth of his rights to proceed to trial, to call and confront witnesses, and to have those witnesses testify even if they preferred not to testify. _Id_.

Upon the judge's request, the State briefly recited the factual basis for the charges.

> The State's evidence would have shown as to
> count one that this defendant in the County of

17

Duval and the State of Florida on May 2nd of
2006, did unlawfully by force, violence,
assault or putting in fear take money or other
property, to wit: Money, the property of Bank
of America from the person or custody of Beth
Nelson, with the intent to permanently or
temporarily deprive Beth Nelson of the money
or other property, contrary to the provisions
of Section 812.13[,] subsection 2C[,] Florida
Statutes.

As to count two, the State's evidence
would have shown [that] this defendant, again
in the County of Duval and the State of
Florida, on May 11th, of 2006, did unlawfully
by force, violence, assault or putting in fear
take money or other property, to wit: Money,
the property of Bank of America, from the
person or custody of Sabrina Davis, with the
intent to permanently or temporarily deprive
Sabrina Davis of the money or other property,
contrary to the provisions of Section
812.13[,] subsection 2C[,] Florida Statutes.

As to count three, this defendant, in the
County of Duval and the State of Florida, on
May 18 of 2006, did unlawfully by force,
violence, assault or putting in fear take
money or other property, to wit: Money, the
property of Compass Bank, from the person or
custody of Autumn McVay, with the intent to
permanently or temporarily deprive Autumn
McVay of the money or other property, contrary
to the provisions of Section 812.13[,]
subsection 2C[,] Florida Statutes.

And[,] finally[,] as to count four, the
State's evidence would have shown that this
defendant in the County of Duval and the State
of Florida, on May 18th of 2006, did
unlawfully by force, violence, assault or
putting in fear take money or other property,
to wit: Money, the property of Compass Bank,
from the person or custody of Sandra Graham,
with the intent to permanently or temporarily
deprive Sandra Graham of the money or other
property, contrary to the provisions of

> Section 812.13[,] subsection 2C[,] Florida
> Statutes.

_Id_. at 117-19.  When the trial judge inquired as to whether the

prosecutor's recitation was, "in fact, what happened," Hogarth

responded: "That's true, yes, sir."  _Id_. at 119.  Hogarth

acknowledged that he was pleading guilty due to the truthfulness of

the prosecutor's recitation.  _Id_.  Accordingly, the court found

that Hogarth's guilty plea "was freely, voluntarily, and knowingly

entered" and that "there is a factual basis" for the plea.  _Id_.

At the August 28, 2006 sentencing hearing, Hogarth addressed

the court, stating in pertinent part:

> I read the witness statements here. I want to
> give honor and respect to the victims.
> Courageous women supporting a family should
> not be subjected to being put in a position to
> where they think something is going to happen
> to them if they don't meet this person's
> demands so he can be self-indulgent.  At no
> time, sir, in my charges or plea, I don't
> carry weapons, I wouldn't put a bruise on
> anybody, but that doesn't absolve me.   The
> fact is is [sic] **I'm a robber**.  I'm not going
> to minimize it.  I'm not a drug addict that
> robs.  I'm over that.  The fact is I had a
> moral character issue that told me that it was
> acceptable to do that.  And that's why I'm
> here today.  And for it to end I have to
> confront it and this is the last opportunity
> in my life where I'll get to do that in front
> of my peers and in a public forum and I wanted
> to do that today, at least confess that, get
> it out of the way so I could leave it, and I -
> - other than that, sir, I really can't even
> raise my head in this courtroom.

Sentencing Tr. at 142-43 (emphasis added).  The court then

adjudicated Hogarth guilty of four counts of robbery and sentenced

him, as a habitual felony offender and prison releasee re-offender, to twenty years of imprisonment on each robbery count, to run concurrently with the other counts and pending parole violation. Id. at 145.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

Complimenting his attorneys on the "good job" they had done on his behalf, Plea Tr. at 115, Hogarth affirmed that there was not anything that his attorneys did not do that he wanted them to do, such as file additional pretrial motions. At the time of the plea hearing, Hogarth was aware that the State's plea offer would expire if defense counsel took the necessary time to file additional pretrial motions. Four days before the plea hearing, defense counsel had written a letter to Hogarth, stating in pertinent part:

>       I discussed your situation with Mr.
> Dorsey [(the prosecutor)]. Mr. Dorsey said
> the State's offer expires on July 24, 2006.
> That means if we file this motion and pass the
> case for a hearing, the State offer will
> expire and you will never get the benefit of
> the 15 to 30 year range again. Instead, the
> State will be asking the judge to sentence you
> to the maximum sentence. Additionally, the
> State will be asking for the sentences to run
> consecutively (meaning back to back) so you
> will be looking at a maximum sentence of 120
> years in the Florida State Prison.

See Pet. Ex. E, Letter to Hogarth from Shannon Padgett, dated July 21, 2006. Hogarth also acknowledged that counsel had answered all his questions, that he was satisfied with counsel's representation and that no one had coerced him into pleading guilty. Plea Tr. at 114, 115. Additionally, the written plea form signed by Hogarth provides: "I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea." Resp. Ex. A-1 at 20.

The United States Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Moreover, "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead

guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, 502 U.S. 835 (1991). Thus, given the record, counsels' performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. At the plea hearing, Hogarth acknowledged that he pled guilty because he was in fact guilty of the charges. Plea Tr. at 119. Additionally, the State's evidence against Hogarth was substantial since there were eyewitnesses to the robberies and Hogarth's confession to the May 2, 2006 robbery of the Bank of America. See Resp. Ex. A-1 at 1-4, Arrest Report. If he had proceeded to trial and a jury had found him guilty of four counts of robbery, he would have faced a maximum sentence of thirty years of imprisonment on each count, totaling one hundred and twenty years of incarceration. Hogarth acknowledged that he understood he would face a maximum total sentence of one hundred and twenty years if he proceeded to trial. Plea Tr. at 114. Therefore, Hogarth's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

# VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claim fails. <u>Knowles</u>, 129 S.Ct at 1420. In the alternative, Petitioner's claims are without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability<br>Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

filed in this case. Such termination shall serve as a denial of the motion.

    4. The Clerk of the Court shall close this case.

    **DONE AND ORDERED** at Jacksonville, Florida, this 6th day of July, 2012.


MARCIA MORALES HOWARD
United States District Judge


sc 4/25
c:
Keith E. Hogarth
Ass't Attorney General (Conley)